**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**LEKESHA HILL** | **Case No. 2:23-CR-00371-JDW** |

# MEMORANDUM

Lekesha Hill pled guilty to six counts of wire fraud in April 2024. For those crimes, I sentenced her to 63 months' imprisonment. Now, she claims that her counsel was constitutionally deficient because he failed to contest her bail violation, object to revisions to the presentence report, or dispute the amount of restitution she owed. Her claims are baseless, so I will deny her Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence.

## I. BACKGROUND

### A. Pre-Trial Proceedings, Guilty Plea, And Appeal

On August 24, 2023, a grand jury charged Ms. Hill with six counts of wire fraud in violation of 18 U.S.C. § 1343. Magistrate Judge Lloret released Ms. Hill on bail subject to the conditions that she (1) attend mental health services under the supervision of Pretrial Services, (2) report to Pretrial Services as directed, (3) surrender or refrain from obtaining a passport, (4) limit her travel to the Eastern District of Pennsylvania and the District of New Jersey, (5) surrender or refrain from obtaining any firearms, (6) have no

contact with potential witnesses or with anyone engaged in criminal activity, (7) seek gainful employment, (8) delete any online advertising or promotion of an accounting or financial services business, and (9) refrain from any employment in bookkeeping, accounting, or financial services.

On April 12, 2024, Ms. Hill pled guilty, without a plea agreement, to all six counts. At the change of plea hearing, the Government recited the facts that it would have proven at trial. It stated that the loss to Business A's accounts was $319,993.62 and that Person 1 sustained an additional loss of $39,390.03 from personal charges on the card that Ms. Hill opened in Person 1's name, bringing the total loss to $359,383.65. I then asked Ms. Hill whether the Government's account was accurate. I asked her whether she "heard what Ms. Smith said the government would show at trial," and she answered, "Yes." I asked her, "Is that what happened?" and she answered, "Yes." I asked her, "So you did what the government says you did?" and she answered, "Yes." (ECF 59 at 28:17–24.) After Ms. Hill pled guilty, I granted the Government's unopposed motion to modify her release conditions and further prohibited her from accessing personal identifiers or financial information in the course of her employment.

On September 11, 2024, the Government alleged that Ms. Hill violated her release conditions by registering and operating a business that offered financial advice and bookkeeping services. It also alleged that Ms. Hill submitted fake pay stubs and bank records to Pretrial Services and that she lied to me to get permission to visit her mother

in Atlanta, where she attended a financial services conference. Ms. Hill's counsel reviewed the Government's petition for revocation of bail with Ms. Hill, who "[did] not dispute the allegations." (ECF 62 at 10:1.) At that hearing, Ms. Hill asked to address these allegations herself. After I confirmed that she understood that her statements could be used against her, Ms. Hill admitted them, saying that she "made a mistake" and "that it was not [her] intention to deceive" me. (ECF 62 at 14:1–6.) Because she did not dispute that she violated the conditions of her release, I revoked bail and ordered her into custody.

On January 17, 2025, I sentenced Ms. Hill to 63 months' imprisonment, three years' supervised release, a fine of $2,500, a special assessment of $600, and restitution of $359,383.65, comprising $309,383.65 to her former employer and $50,000 to Liberty Mutual Insurance Company. At sentencing, Ms. Hill confirmed that she had read the presentence report, had no questions about it, and had identified no inaccuracies that harmed her position and no omissions that would have helped it. She did not dispute the report's restitution figure or the Government's basis for it.

Ms. Hill appealed, arguing that I erred by: (1) applying an obstruction enhancement; (2) applying a sophisticated means enhancement; and (3) ordering restitution. The Third Circuit affirmed. *United States v. Hill*, No. 25-1145, 2026 WL 623095, at *2–*3 & n.7 (3d Cir. Mar. 5, 2026).

### B. Section 2255 Motion

On April 20, 2026, Ms. Hill filed a Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. She asserts three grounds for relief, each premised on ineffective assistance of counsel: failure to (1) contest the allegation that she violated her conditions of bail; (2) object to portions of the presentence investigation report ("PSR") recommending an obstruction enhancement and withdrawing credit for acceptance of responsibility; and (3) dispute the PSR's restitution figure of $359,383.65 or the Government's basis for it.

## II. LEGAL STANDARD

Section 2255(a) permits a prisoner serving a federal sentence to move the sentencing court to "vacate, set aside, or correct the sentence" where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain relief under § 2255(a), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quotation omitted). This heightened standard reflects "the great interest in finality of judgments," which "has special force with respect to convictions based on guilty pleas." *Id.* (quotation omitted).

Section 2255(b) requires a district court to hold a hearing to resolve the issues and make factual findings and legal conclusions on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In determining whether to hold a hearing, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). The district court need not investigate a movant's claims based on "vague and conclusory allegations." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). However, if the movant alleges any non-frivolous facts that, accepted as true, would warrant relief under § 2255(a), then the court must hold an evidentiary hearing. *See United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005).

## III. DISCUSSION

Because all of Ms. Hill's arguments allege ineffective assistance of counsel, the familiar standard from *Strickland v. Washington*, 466 U.S. 668 (1984), governs. Under *Strickland's* two-part inquiry, Ms. Hill "must show that counsel's performance was deficient" by demonstrating that her "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "[B]ald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing," let alone a finding of deficient performance. *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (citation

omitted). Counsel cannot be deficient for failing to raise a meritless objection. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). In addition, Ms. Hill "must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

Because Ms. Hill attacks counsel's performance at sentencing rather than the validity of her plea, she must show a reasonable probability that, but for counsel's errors, her sentence would have been lower. *See Glover v. United States*, 531 U.S. 198, 203–04 (2001). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. None of Ms. Hill's arguments satisfies this standard.

*First*, Ms. Hill cannot show that her counsel should have done more to context the allegation that she violated the conditions of her bail. At the bail violation hearing, Ms. Hill admitted that she violated her release conditions. And, in any event, the Government's evidence of her violation was overwhelming, including Ms. Hill's own social media posts. Thus, her counsel could not have changed the outcome with some theoretical objection.

*Second*, Ms. Hill cannot show that her counsel should have objected to the PSR. At sentencing, Ms. Hill confirmed that the presentence report did not contain any errors or omissions. Her "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In any event, her lawyer did argue against my imposition of a sophisticated means enhancement. I just overruled the

objection. Also, the issues that she says her counsel should have raised by objection are issues that the Third Circuit considered and rejected on the merits in her appeal. The Third Circuit's decision demonstrates that any further objection would have been meritless, so her counsel cannot have been ineffective for failing to make such an objection.

*Third*, and finally, Ms. Hill's complaints about the amount of restitution cannot support her claim. Under § 2255, a prisoner may challenge only the fact of her custody. It is not a way to challenge a restitution award, even under the guise of ineffective assistance of counsel. *See Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) (per curiam). Also, at her change of plea hearing, she confirmed that she stole $359,383.65. That, coupled with her concession at the sentencing hearing that there was nothing incorrect in the PSR, establishes that the amount of restitution is correct. Her counsel did not err by failing to object to a correct calculation.

## IV. CONCLUSION

Ms. Hill cannot establish that her counsel did anything wrong. Her complaints all focus on meritless objections that she wanted him to advance. None of them would have changed the outcome of her sentencing proceeding. I will therefore deny her Motion without a hearing. Also, because Ms. Hill has not made a "substantial showing of the denial of a constitutional right," and no reasonable jurist would debate that finding, I

will not issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

July 30, 2026